## THE DOROTHY.

### BICKNELL v. BOSTON INS. CO.

#### (District Court, D. Maine. August 11, 1913.)

#### Nos. 112, 145.

SALVAGE (§ 48*)—CONTRACT—CONSTRUCTION.

Evidence considered in relation to a contract under which libelant performed services in raising a sunken schooner, and *held* to show that the work was to be done on a salvage basis and not for a per diem pay and expenses.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 122–124; Dec. Dig. § 48.*]

In Admiralty. Suit by Charles E. Bicknell against the schooner Dorothy and same against the Boston Insurance Company. Decree for libelant in first suit and for respondent in second.

M. A. Johnson, of Rockland, Me., and Robert T. Whitehouse, of Portland, Me., for libelant.

Blodgett, Jones & Burnham, of Boston, Mass., for libelee.

HALE, District Judge. On June 25, 1909, Charles E. Bicknell filed in this court his libel for salvage against the schooner Dorothy, No. 112, alleging the schooner to be of 70 tons burden, having one Sullivan as master, and having a crew of 16 men; that on May 2, 1909, she sailed from Salem on a voyage to the fishing grounds off the Maine coast; that while proceeding on her voyage, at about 5 o'clock in the morning of May 5, 1909, she was anchored about six miles from Rockland, Maine, and was struck on the port quarter by the steamship City of Bangor, of the Eastern Steamship Company; that she was cut through the side, to and below her water line, and almost immediately sunk in ten fathoms of water; that the libelant raised the schooner from the bottom of the sea with great difficulty and large expense and by towboats, lighters, and pumps caused her to be taken to a safe place at Rockland, Me.; that, but for assistance of the libelant, the schooner would probably have been a total loss; that, by reason of the peril incurred, and the importance of the services rendered by him, in raising and saving the Dorothy, the libelant deserved to have, and therefore claimed, commensurate reward for salvage.

---

On July 2, 1909, on the petition of the libelant, this court granted an interlocutory order of sale of the schooner, in pursuance of which, on July 10, 1909, the schooner was sold at public auction to Charles E. Bicknell for $825, and, after subtracting charges of sale, the balance thereof, $768.68, was paid into this court on July 12, 1909. On March 10, 1910, Charles E. Bicknell filed his libel in this court against the Boston Insurance Company, No. 145, alleging, as in the former libel, the damage to the vessel and the salvage services of the libelant; also that the Boston Insurance Company was, at the time of the loss of the schooner, an underwriter of a policy of insurance upon her; that on or about May 5th the insurance company applied to the libelant, who is a contractor and builder and maintains a repair yard in Rockland, and entered into an agreement with him to raise the schooner from the bottom of the sea, save her, and cause her to be taken to a safe place at Rockland, and in consideration of those services agreed to pay the libelant the value of his labor and of materials furnished, and moneys paid out in performing the services, and unavoidable damage in performing them; that the libelant accepted the proposition of the insurance company, made the agreement, and undertook to perform the services, and in pursuance of same he raised the schooner from the bottom of the sea, performed the labor, furnished the materials, and expended moneys, the total value of such services and money expended being the amount of $1,550, for which sum he files a schedule as a part of the libel, and for which sum he seeks to recover.

The issues were made up on both of these libels and testimony taken to be used as applicable to both cases.

The libelant contends that, after the schooner was run down by the Eastern Steamship Company and sunk in ten fathoms of water, he had a conference with one Norton, of the firm of Francis Cobb & Co., the agents of the insurance company; that Norton tried to get the libelant to send his fleet to raise the schooner on a "no cure no pay" basis; libelant refused and demanded day pay and expenses; that later Norton, for the insurance company, told him he could go there with his fleet at day pay and expenses and see what he could do towards raising the schooner, and that he might use up $250; he afterwards reported to Mr. Norton that he had used up the money, and Norton told him to go ahead by day pay and expenses until he had used up $150 more. The libelant further contends that, after using up this second amount for labor and expenses, the schooner was brought in to Holiday Beach, several miles from Rockland; and after this Capt. Eaton, on behalf of the insurance company, came down and told him to go ahead and put her in to Rockland; the company made a contract with him to complete the job of saving the schooner at a per diem rate and expenses; the whole job was performed by him at great expense and with great labor; in raising the schooner and getting her into a safe place he used his own vessels and other tugs and vessels; he worked day and night and has charged only a reasonable amount for what he did and paid; after he got her to the beach he had the schooner patched up and towed by a steam

lighter to the beach at Rockland; he rendered a bill to the insurance company; Norton was requested by his company to get from the libelant a detailed statement of his cash disbursements and time; libelant sent the company a bill of expenses; on June 3d the company wrote to Cobb & Co. to make substantially the best settlement of the salvage that could be made; and on June 16th the company wrote their agents the following letter:

"Sch. Dorothy.

"Boston, June 16, 1909.

"Messrs. Francis Cobb & Company, Rockland, Maine—Gentlemen: In view of the extensive damage to this vessel we are paying our assured a total loss. We have filed claim against the steamship company for the damage done to the vessel, but we cannot get them to agree on the extent of the damage, the value of the services rendered in salving the vessel, and the value that remains. Therefore, in order to be in a position to substantiate our claim against the steamer it is necessary that the valuation and the value of the salvage services rendered be fixed by the court. Will you kindly see Mr. Bicknell and ask him to bring libel for his salvage services, so that the vessel can be promptly sold at marshal's sale. Then when we know what the vessel sells for we will take up with him the settlement of the salvage.

"Please let us know what counsel Mr. Bicknell wishes to employ to file his libel. Mr. Littlefield is the only lawyer we know at Rockland.

"Yours truly, William R. Hedge, Vice President."

Libelant's further contentions are: That the insurance company desired Mr. Bicknell to bring the salvage libel as a friendly matter, to accommodate them, in order that they could secure a settlement with the Eastern Steamship Company, and that the company did not intend to hold Mr. Bicknell to his rights under the salvage libel; but, in any event, they supposed the vessel would bring much more at the sale than she did bring. The libelant urges that the insurance company recognized the fact that they had a distinct understanding with him that he was working at day pay and expenses; the letters in question were written with that in mind; and he should not be limited to his salvage claim but should be allowed to prevail in his suit against the insurance company and have the sum which he properly charged them and now seeks to recover in that suit; that all the facts show that no one of the parties anticipated or intended that the original libel for salvage, brought by the libelant, was anything more than a friendly act; that such libel should be dismissed and the rights of the parties decided upon the other case.

The insurance company, by its claim and answer in the salvage suit, is also the claimant of the schooner. The company contends that the libelant is bound by his previous action in rem and is not entitled to further rights than those given in his libel against the schooner. There is a sharp conflict of testimony upon the question relating to the contract itself between the parties. The proofs are persuasive to my mind that on May 5th the company authorized its agents, Cobb & Co., to contract with Bicknell to raise the schooner on condition that the work was to be done upon a salvage basis, if Bicknell should succeed in raising and saving the schooner; and that, if the schooner was not raised and saved, Bicknell should be paid his expenses actually incurred up to a certain sum; that afterwards author-

ity was given to Cobb & Co. to increase the guaranty to another sum. There is sharp contention as to whether the final guaranty was to be $250, as the respondent says, or $400, as the libelant says. I do not think it necessary for me to decide which party is right in this contention. I am satisfied that the proofs do not show that the parties ever contemplated removing the matter from a salvage basis. In its letter the insurance company speaks of the value of the services rendered in "salving" the vessel. I see nothing in the letter of June 16th which tends to the conclusion that the insurance company desired the salvage suit, No. 112, brought for any colorable or fraudulent purpose. It was natural that it should wish for the amount of the salvage to be ascertained, so that the claim of the underwriters against the Eastern Steamship Company should be fixed. Much stress is laid by the libelant on the expression in the letter:

"When we know what the vessel sells for, we will take up with him the settlement of the salvage."

I cannot think that this means anything more than that the company, after the salvage claim was brought, would be ready to confer with the libelant with a view of settlement, pending the trial of the case. The suggestion that a salvage libel be filed was the natural and ordinary suggestion of parties situated as these parties were. At the sale the vessel brought much less than either party supposed it would bring; the libelant himself bidding the vessel in. But this does not affect the rights of the parties.

On the whole evidence I am satisfied that the libelant in No. 145 has not made out his claim by competent proofs.

It is the duty of the court, then, to pass upon the proofs as they relate to the salvage case, No. 112. After a careful consideration of these proofs, I am of the opinion that the libelant is entitled to an award of $700 for salvage.

In No. 145 the judgment is that the libel be dismissed, but without costs.

In No. 112 a decree may be entered for the libelant for the sum of $700; the libelant recovers his costs.